IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CRISTINA ZAVALA,

        Plaintiff,

v.

UNITED AIRLINES, INC.

        Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Cristina Zavala, by and through her attorneys, HKM Employment Attorneys, LLP, for her Complaint and Jury Demand against United Airlines, Inc. ("United" or "Defendant") states and alleges as follows:

### PRELIMINARY STATEMENT

1.    This is an employment discrimination case arising out of Defendant's discrimination against Ms. Zavala based on her disability and/or perceived disability, gender/sex, and race/national origin, as well as Defendant's retaliation against Ms. Zavala after her protected activity of reporting discrimination and/or harassment and requesting and taking leave under the Family and Medical Leave Act.

2.    Ms. Zavala, a Latina veteran with a 90% disability rating from the Department of Veteran Affairs, was a stellar employee, loved and respected by her staff for her competence and

1

compassion alike. Ms. Zavala likewise loved her job as a Maintenance Supervisor, and she loved her staff. Ms. Zavala wanted to build a long career with Defendant.

3.      However, when Ms. Zavala needed medical leave to seek treatment for her disability, her peers and supervisors made her beloved place of work a place of hostility and discrimination. Ms. Zavala's peers and supervisors spoke poorly about Ms. Zavala's leave and disability, accused her of abusing the system, and falsely accused her of lacking professionalism to the team at large. Ms. Zavala reported the discrimination and retaliation to Human Resources.

4.      With a target on her back from her medical leave and related protected activity, the conditions at work worsened over the next couple of years, especially as Ms. Zavala began engaging in more protected activity to advocate for herself and her employees. Rather than investigating Ms. Zavala's claims of discrimination and retaliation, Defendant responded by investigating Ms. Zavala for releasing her employees early on the night before Thanksgiving – a customary practice her white male counterparts had done for years with no disciplinary actions.

5.      In further retaliation, Defendant failed to promote Ms. Zavala, promoting less qualified white males over her. Eventually, Defendant terminated Ms. Zavala, citing her release of employees on the evening before Thanksgiving as its reason.

## PARTIES

6.      Ms. Zavala is, and at all times relevant to the Complaint was, a resident and domiciliary of Colorado who resided at 225 S. Harrison Street Apartment 417 Denver, Colorado 80209.

7.      At all times relevant to this Complaint, Ms. Zavala was an employee of Defendant as defined by 42 U.S.C. § 12111(4), 42 U.S.C. § 2000e(f), C.R.S. § 24-34-401(2), and 29 U.S.C. § 2611(2).

8.      Defendant United Airlines, Inc. is a Delaware corporation with its principal office located at 233 South Wacker Drive, 14th Fl WHQCT, Chicago, Illinois 60606.

9.      At all times relevant, Defendant was Ms. Zavala's employer as defined by 42 U.S.C. § 12111(5), 42 U.S.C. § 2000e(b), C.R.S. § 24-34-401(3), and 29 U.S.C. § 2611(4).

## JURISDICTION AND VENUE

10.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

11.     Ms. Zavala brings this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq.* ("CADA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.* ("Title VII"); and 42 U.S.C. § 1981 ("Section 1981").

12.     This Court has original jurisdiction over Ms. Zavala's claims under the ADA, the FMLA, Title VII, and Section 1981 pursuant to 28 U.S.C. § 1331 because those claims arise under federal law.

13.     The Court may exercise supplemental jurisdiction over Ms. Zavala's state law claims pursuant to 28 U.S.C. § 1367(a), as such claims arise out of the same case or controversy as Ms. Zavala's federal claims.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

15.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

16.     On or about August 25, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (EEOC Charge No. 541-2023-03317) alleging discrimination based on Plaintiff's disability, race/national origin (Latina/Hispanic), gender/sex (female), and retaliation.

17.     On or about January 29, 2024, Plaintiff filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD"), alleging claims of race, sex, disability/perceived disability discrimination and retaliation.

18.     On or about August 14, 2024, Plaintiff filed Charges of Discrimination with the EEOC and the CCRD (EEOC Charge No. 541-2024-04225) alleging additional retaliation for filing EEOC Charge No. 541-2023-03317.

19.     On or about January 9, 2025, Plaintiff filed Charges of Discrimination with the EEOC and CCRD (EEOC Charge No. 541-2024-04775) alleging additional discrimination and retaliation, including Plaintiff's termination.

20.     Plaintiff received her Notice of Right to Sue from the EEOC with respect to all Plaintiff's Charges of Discrimination (EEOC Charge No. 541-2023-03317; EEOC Charge No. 541-2024-04225; and EEOC Charge No. 541-2024-04775) on June 3, 2025.

21.     Plaintiff files her complaint within 90 days of receiving her Notice of Right to Sue from the EEOC.

## FACTUAL ALLEGATIONS

22.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

### Ms. Zavala Begins Working at United and Receives Excellent Performance Reviews

23.     Ms. Zavala is a disabled veteran with a disability rating of 90% with the Department of Veterans Affairs, suffering from Post-Traumatic Stress Disorder ("PTSD") related to her service in the military.

24.     Ms. Zavala is a Latina woman of Mexican and Puerto Rican descent.

25.     Ms. Zavala began working for Defendant as a Maintenance Supervisor, Simulator Operations in Defendant's Flight Training Center ("DENTK") in Denver, Colorado on or about January 19, 2021.

26.     Ms. Zavala oversaw and facilitated maintenance with the Flight Simulator Technicians and Engineers, who managed flight simulators that trained commercial pilots for United.

27.     Ms. Zavala initially reported to Mike Huff (Operations Manager) and Andrew Gilbert (Senior Manager).

28.     Ms. Zavala was the only female of color in a supervisor position at DENTK.

29.     At all times during her employment, Ms. Zavala performed her job well, and in accordance with Defendant's legitimate expectations.

30.     Ms. Zavala loved her job, and her employees respected and trusted her. Ms. Zavala was regarded by her employees as a competent, knowledgeable, and caring supervisor.

### Ms. Zavala Takes Intermittent FMLA Leave for Her PTSD Related to Her Military Service

31.     In or around February 2022, Ms. Zavala experienced a flare-up of her PTSD and requested intermittent FMLA leave.

32.     She experienced a panic attack and sought treatment to better understand her condition.

33.     On or about February 23, 2022, Defendant approved Ms. Zavala's intermittent FMLA leave up to two times per month for a duration of up to three days.

34.     Ms. Zavala's FMLA leave was related to her PTSD and therefore was also an accommodation of her disability.

### Ms. Zavala's Coworkers Discriminate and Retaliate Against Ms. Zavala for Her Disability and Protected Leave and Ms. Zavala Reports the Discrimination to Defendant

35.     Ms. Zavala used intermittent FMLA leave from February 2022 to mid-2023.

36.     After engaging in the protected activity of requesting FMLA leave and during the time she was taking intermittent FMLA leave, Ms. Zavala discovered that her supervisors, Adrian Moldonado (Maintenance Supervisor), Mr. Gilbert, Paul Hafer (Senior Manager), and Mr. Huff, were making derogatory and discriminatory comments about Ms. Zavala, her disability, and her FMLA leave.

37.     Ms. Zavala became aware that Mr. Moldonado claimed that Ms. Zavala was the worst supervisor that "ever lived," that Ms. Zavala was "useless."

38.    Ms. Zavala became aware that Mr. Moldonado asked why Ms. Zavala gets so much time off. He also asked what he was supposed to do if Ms. Zavala "passes out."

39.    Paul Hafer (Senior Manager) discussed Ms. Zavala's leave openly in front of her employees, declaring that Defendant should take FMLA away from Ms. Zavala because she was abusing the system.,

40.    Mr. Zavala's male coworkers, including Eddy Murphy (Maintenance Supervisor) and Mr. Moldonado, had taken multiple days off work and did not receive disciplinary action for their absences.

41.    In or around May 2022, Ms. Zavala reported the discriminatory remarks to Bob Parker (Human Resources). Ms. Zavala told Mr. Parker that her coworkers were speaking in a derogatory manner about her FMLA leave.

42.    In or around May 2022, Mr. Parker had a discussion with Ms. Zavala's coworkers, including Mr. Hafer, Mr. Huff, Mr. Gilbert, Mr. Moldonado, Mike Attaway (Supervisor), Anthony Toomey (Supervisor), Bob Admundsen (Director), and Don Wolfe (Supervisor), telling Ms. Zavala that her leave was protected and they were not to discuss it.

43.    In or around May 2022, Mr. Parker told Ms. Zavala directly, in front of Mr. Amundsen and Mr. Gilbert, to reach out to him immediately if her coworkers' conduct continued.

44.    Despite the significant discrimination and retaliation Ms. Zavala experienced, she continued to be a strong leader. For example, she regularly hosted events to raise morale at DENTK with her staff.

45.    In or around May 2022, Ms. Zavala hosted one such barbecue and invited the technicians and engineers, as well as the managers and directors.

46.     Mark Champion (Managing Director, DENTK) attended Ms. Zavala's barbecue, while Mr. Gilbert and Mr. Amundsen declined to attend.

47.     However, after Mr. Gilbert and Mr. Amundsen discovered that Mr. Champion had been in attendance and expressed his appreciation for the event, Mr. Gilbert and Mr. Amundsen accused Ms. Zavala of failing to invite them.

48.     This was a part of a larger pattern of attempting to make Ms. Zavala seem unprofessional.

49.     Despite Mr. Parker's admonitions related to Ms. Zavala's FMLA leave, and disability, and related reasonable accommodations, on or around June 2022, Mr. Huff and Mr. Gilbert issued Ms. Zavala a verbal warning for her absences, even though her absences were covered under the FMLA and were a reasonable accommodation. Mr. Huff and Mr. Gilbert told Ms. Zavala that she needed to watch her absences.

50.     Additionally, during this meeting, Mr. Huff required Ms. Zavala to identify her absences as either paid time off or FMLA leave on a spreadsheet that was viewable by all supervisors and all senior management. Having to disclose whether her absence was paid time off or related to her medical leave, i.e. FMLA, made Ms. Zavala uncomfortable.

51.     Ms. Zavala opposed this requirement by telling Bob Parker (Human Resources) that this spreadsheet policy made her uncomfortable.

52.     In or around September 2022, Ms. Zavala again contacted Mr. Parker based on Defendant's failure to address her previous reports of discrimination.

53.    In response to Ms. Zavala's report, Defendant's conduct worsened. Mr. Moldonado became even more hostile toward Ms. Zavala, while treating Ms. Zavala's male counterparts with respect.

54.    For example, the technicians played a prank on Mr. Moldonado by placing an aircraft chair in place of his office chair on a day that Ms. Zavala was absent. Mr. Moldonado became angry, threw the chair, and blamed Ms. Zavala for the chair prank.

55.    In response to Ms. Zavala's September 2022 report, Mr. Parker held another meeting with the other supervisors about their conduct toward Ms. Zavala.

56.    During the meeting, Mr. Parker explained guidelines and expectations related to taking FMLA leave and respecting coworkers who were taking FMLA leave and also explained the possible consequences for failing to follow those guidelines.

57.    Despite the October 2022 FMLA meeting, Defendant's discriminatory and retaliatory conduct did not cease. In fact, it worsened.

58.    For example, Mr. Gilbert blamed Ms. Zavala for all the department's errors, even if Ms. Zavala was not responsible.

59.    During a meeting with Mr. Gilbert and Mr. Amundsen in November 2022, Mr. Amundsen implied that Ms. Zavala would not qualify for a promotion due to her absences, i.e. her FMLA leave and reasonable accommodations.

### Following Years of Custom, Ms. Zavala Release Employees from Work Early in November 2022

60.    For years, white male supervisors, including Mr. Butler, Mr. Hafer, Mr. Amundsen, and Brett Sauer, allowed their staff to leave work early with pay on the night before Thanksgiving.

61.    On or about November 23, 2022, as was customary, Ms. Zavala also permitted her staff to leave early on Thanksgiving Eve with pay.

62.    On or about December 8, 2022, Mr. Gilbert and Mr. Amundsen met with Ms. Zavala to discuss her early release of employees on Thanksgiving Eve.

63.    Ms. Zavala informed Mr. Gilbert and Mr. Amundsen that she had let some employees go a couple of hours early, but that she believed it was permitted since other supervisors had routinely allowed employees to leave work early on Thanksgiving Eve.

64.    Mr. Gilbert and Mr. Amundsen told Ms. Zavala she was not permitted to do this again and issued Ms. Zavala a verbal warning for releasing employees early.

65.    Defendant's white male supervisors who had preceded Ms. Zavala had engaged in this practice for years with no disciplinary measures.

66.    Ms. Zavala did not allow her employees to leave early on Thanksgiving Eve again.

67.    Ms. Zavala believed this was the extent of her discipline, until months later in or around May 2023, when the issue resurfaced following protected conduct.

**Ms. Zavala Seeks Further Relief from United to No Avail**

68.    Failing to receive the help she sought related to the discrimination and retaliation she was facing, Ms. Zavala emailed the Ethics and Compliance Department on or around December 21, 2022 ("Ethics Complaint").

69.    In her email to the Ethics and Compliance Department, Ms. Zavala described the discrimination and retaliation she had been subjected to because of her medical leave and disability.

70.     Ms. Zavala further stated that, despite her multiple reports to Human Resources and the subsequent meetings, Defendant allowed Ms. Zavala's coworkers to discriminate and retaliate against her.

71.     Ms. Zavala reported that the treatment had a significant impact on her mental and physical health, and that she did not feel comfortable or welcomed in meetings with her peers and leadership.

72.     In or around January 2023, Ms. Zavala received a positive performance review with no mention of any allegation that she had improperly released employees on the evening before Thanksgiving.

73.     On or around January 18, 2023, Ms. Zavala met with Kayla Howell (Human Resources) related to the Ethics complaint.

74.     In or around March 2023, Ms. Zavala became aware that Defendant had not contacted her witnesses related to her Ethics complaint.

75.     Nevertheless, Defendant notified Ms. Zavala that it had concluded its investigation into Ms. Zavala's Ethics Complaint on or about April 11, 2023.

76.     Ms. Zavala continued to request intermittent FMLA leave from February 2, 2023 until March 1, 2024.

77.     Defendant denied Ms. Zavala's FMLA leave during this period, forcing Ms. Zavala to take unpaid and unprotected leave and causing unnecessary stress and uncertainty.

78.     However, on or about September 20, 2024, Ms. Zavala received retroactive FMLA approval for her absences through February 2, 2023, until March 1, 2024.

**Ms. Zavala Reports Racial Discrimination for Two Employees and Faces Retaliation**

79.     In or around April 2023, Clarence Washington (Lead Flight Simulator Technician) and Clay Washington (Lead Flight Simulator Technician), two African American employees, reported racial discrimination from a white male supervisor, Chris Hirsch (Supervisor), to Ms. Zavala.

80.     Speaking derisively about Diversity, Equity, and Inclusion ("DEI") efforts, Mr. Hirsch made comments to Messrs. Washington about pilots of color, including that pilots of color should not get preferential treatment, insinuating the DEI program afforded pilots of color preferential treatment.

81.     Messrs. Washington reported Mr. Hirsch and his offensive comments to Mr. Gilbert, but upon information and belief, Mr. Gilbert did nothing about their reports.

82.     In addition, around this time, Don Hovely (Lead Flight Simulator Technician) made racist comments, including telling immigrants to go back from where they came from and making comments about "Operation Wetback" – a state-sponsored program to deport Latinos that was in place during the 1950s in the United States. Mr. Hovely claimed that such programs were a good part of the United States' DNA.

83.     Ms. Zavala reported Mr. Hirsch's and Mr. Hovely's comments to Mr. Gilbert.

84.     Even though Mr. Gilbert was Ms. Zavala's supervisor, Mr. Gilbert confessed he did not know what to do about the reports and asked Ms. Zavala what he should do. Ms. Zavala advised him to escalate the reports to Human Resources.

85.     Upon information and belief, Mr. Gilbert did not escalate the reports of discrimination.

86.     Soon after her reports of Mr. Hirsch's and Mr. Hovely's racist comments and soon after the purported conclusion of Defendant's investigation into Ms. Zavala's complaints of discrimination, on May 9, 2023, Ms. Zavala received an email from Defendant regarding her early release of employees on Thanksgiving Eve. Defendant scheduled a final interview with Ms. Zavala on or about May 18, 2023, via Microsoft Teams.

87.     Ms. Zavala, who believed the matter had been resolved back in November 2022 with her verbal warning, did not know that any investigation was still ongoing.

88.     The passage of so much time, and the fact that Ms. Zavala had acted in accordance with an established practice, demonstrate that the purported investigation was caused by Ms. Zavala's complaints.

**Ms. Zavala Receives a Termination Warning and is Denied a Promotion, While Defendant Promotes a Less Qualified White Male Instead of Ms. Zavala**

89.     In or around early June 2023, Ms. Zavala expressed her interest in applying for a Senior Manager position.

90.     After expressing interest in the promotion, on or about June 14, 2023, and as a result of the purported investigation into the early release in November 2022, Mr. Gilbert and Mr. Amundsen gave Ms. Zavala a Termination Warning.

91.     Ms. Zavala was forced to disclose the Termination Warning in her application process for the Senior Manager promotion.

92.     Unsurprisingly, Defendant failed to promote Ms. Zavala to the Senior Manager position, despite her significant qualifications, because the retaliatory Termination Warning disqualified her from the promotion.

13

93.     Instead, Defendant promoted Mr. Gilbert to the Senior Manager position, even though he was less qualified.

94.     For example, Ms. Zavala was a flight simulator engineer and worked on flight simulators.

95.     Upon information and belief, Mr. Gilbert had never worked on flight simulators.

96.     Experience with flight simulators was required for the Senior Manager position.

97.     Ms. Zavala had ten years of experience with union employees.

98.     Upon information and belief, Mr. Gilbert did not have ten years of union experience.

99.     Ten years of experience with union employees was required for the Senior Manager position.

100.    Ms. Zavala had a bachelor's degree.

101.    Upon information and belief, Mr. Gilbert did not have a bachelor's degree.

102.    A bachelor's degree was required for the Senior Manager position.

103.    With Mr. Gilbert's promotion, Steve Butler (Manager) took over Mr. Gilbert's position.

104.    On or about December 2, 2023, hearing nothing about her reports related to Mr. Hirsch's racist comments, Ms. Zavala emailed Mr. Gilbert again about Mr. Hirsch.

105.    Ms. Zavala and Mr. Gilbert had a follow-up meeting the next week, wherein Mr. Gilbert defended Mr. Hirsch's discriminatory conduct.

**Ms. Zavala Receives Her First Negative Performance Review and PIP, Yet Receives No Support to Correct Her Purported Performance Deficiencies**

106.    From January 2024 until July 2024, Ms. Zavala continued to perform her job satisfactorily, despite continued hostility, discrimination, and retaliation.

107.    Ms. Zavala was not aware of any alleged performance deficiencies.

108.    From 2021 to 2023, Ms. Zavala consistently received positive performance reviews.

109.    On or about March 1, 2024, Ms. Zavala requested FMLA leave.

110.    However, Defendant failed to approve Ms. Zavala's leave, citing incomplete FMLA forms as its reason.

111.    Ms. Zavala's healthcare provider completed Ms. Zavala's forms fully and accurately.

112.    Nevertheless, Defendant failed to approve Ms. Zavala's FMLA-qualifying leave, despite Ms. Zavala's eligibility, from March 1, 2024 until Ms. Zavala's termination in or around December 2024.

113.    Ms. Zavala continued to take unpaid and unprotected leave even without FMLA approval for her disability.

114.    On July 18, 2024, Mr. Gilbert and Mr. Butler gave Ms. Zavala her first negative performance review, rating her as "off track." The review was short, approximately five sentences long, and vague.

115.    Neither Mr. Gilbert nor Mr. Butler gave Ms. Zavala any counseling, support, or next steps as to how to improve.

116.    On or around July 19, 2024, Ms. Zavala requested a meeting to better understand and improve her alleged performance deficiencies.

117.    On or about July 22, 2024, Mr. Amundsen emailed supervisors and stated that he would no longer approve unpaid leave—a clear reference to Ms. Zavala's need for leave.

118.    After Mr. Amundsen's email, Ms. Zavala was unable to take unpaid leave, which she needed for her disability.

119.    Defendant did not hold the requested meeting with Ms. Zavala regarding her "off-track" review until August 16, 2024.

120.    During the August 16, 2024 meeting, Ms. Zavala asked Mr. Gilbert and Mr. Butler for specific examples to substantiate her "off-track" rating.

121.    Instead of offering specific examples, Mr. Gilbert and Mr. Butler evaded Ms. Zavala's questions by vaguely asserting that the language in her performance review applied to her entire supervisor group.

122.    Ms. Zavala shared specific examples that refuted the claims in her poor performance review.

123.    At the end of the meeting, Ms. Zavala expressed to Mr. Butler and Mr. Gilbert that she still did not have a clear understanding of how she should improve her performance.

124.    Ms. Zavala told Mr. Butler and Mr. Gilbert that she would be reaching out to Human Resources as she felt the review was unfair.

125.    On August 17, 2024, Ms. Zavala sent an email to Kimberly Bloom (Human Resources) explaining her concerns about the performance review and the follow-up meeting with Mr. Gilbert and Mr. Butler.

126.    Ms. Bloom rejected Ms. Zavala's request for a meeting, instead replying that Mr. Gilbert and Mr. Butler would follow up with Ms. Zavala to provide clarification on her performance review.

127.    On September 4, 2024, Ms. Zavala again met with Mr. Gilbert and Mr. Butler, who issued Ms. Zavala a Performance Improvement Plan ("PIP").

128.    Ms. Zavala requested regular follow-up meetings during her PIP to continue to seek clarification on her alleged performance deficiencies and ways to correct them.

129.    However, after five follow-up meetings, Mr. Gilbert and Mr. Butler still failed to clearly articulate why they had placed Ms. Zavala on a PIP and how she could improve. The PIP follow-up meetings routinely focused on high-level suggestions for performance improvement rather than specific issues with Ms. Zavala's performance. Further, Mr. Gilbert and Mr. Butler would engage in off-topic conversations, wholly unrelated to Ms. Zavala's PIP and/or performance concerns.

130.    Throughout the course of Ms. Zavala's PIP, Defendant set Ms. Zavala up for failure by suddenly changing processes that were previously in place and holding her accountable for changes in process that were never communicated to her.

131.    For example, Mr. Gilbert trained Ms. Zavala to do the Discrepancy Report ("DR") dance in a certain way. In fact, all supervisors did it in the same way that Ms. Zavala did.

132.    Suddenly, during Ms. Zavala's PIP, Mr. Gilbert told Ms. Zavala that she was doing it incorrectly.

133.    Ms. Zavala objected to Mr. Gilbert, reminding him that she was doing it the way he had taught her, and told Mr. Gilbert that all supervisors were doing it this way.

134.     Nevertheless, Ms. Zavala updated her method of the DR dance to conform with Mr. Gilbert's new method. The change to the DR dance resulted in a different outcome, meaning that Mr. Gilbert had incorrectly instructed Ms. Zavala and that all supervisors had been doing the DR dance incorrectly.

135.     However, Mr. Gilbert never acknowledged that his training was the cause of the discrepancy, and Ms. Zavala was the only supervisor who received a reprimand for it.

136.     In another example, Ms. Zavala took daily visual roll call of her employees for three years.

137.     However, suddenly during the PIP, Mr. Gilbert told her that her method was wrong because she was not placing a checkmark next to the names of the employees.

138.     Defendant never informed Ms. Zavala that this was an issue until the PIP.

139.     Ms. Zavala reflected this concern during her PIP meetings with Mr. Gilbert and Mr. Butler and requested that leadership communicate these process changes formally. However, Mr. Gilbert and Mr. Butler continued to fail to communicate the changes to Ms. Zavala.

140.     On or around September 12, 2024, Ms. Zavala met with Reyna Kohlman (Corporate Security) about Ms. Zavala's multiple reports of harassment, discrimination, and retaliation.

141.     When Ms. Kohlman asked Ms. Zavala for additional information about her previous complaints, Ms. Zavala told Ms. Kohlman she feared further retaliation if she discussed her past complaints. However, Ms. Kohlman assured Ms. Zavala that she could share the information safely.

142.     At that time, Ms. Zavala told Ms. Kohlman about her previously filed EEOC Charges against Defendant for discrimination and retaliation.

143.    On or about December 6, 2024, Defendant closed its investigation into Ms. Zavala's complaints of discrimination and retaliation, issuing a "no findings" result.

**Defendant Terminates Ms. Zavala, Citing Her
Lack of Improvement on the PIP as its Reason**

144.    On or about December 11, 2024, Defendant terminated Ms. Zavala, citing insufficient improvement on her PIP.

145.    Ms. Zavala's termination letter falsely claimed that Defendant had provided "additional support" to Ms. Zavala, even though Ms. Zavala had reported many times that she did not understand the concerns with her performance, nor how she could improve.

**FIRST CLAIM FOR RELIEF**
**Disability and/or Perceived Disability Discrimination**
**Americans with Disabilities Act**
**42  U.S.C. § 12101, *et seq.* ("ADA")**

146.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

147.    The ADA defines a disability as a physical or mental impairment that substantially limits one or more major life activities of such individual; or being regarded as having such an impairment. 42 U.S.C. § 12102(1).

148.    Plaintiff suffers from PTSD, a condition that substantially limits one or more major life activities.

149.    The ADA prohibits employers from discriminatory or unfair employment practices against employees because of the employee's disability.

150.    Plaintiff was qualified for her position and performed her position satisfactorily.

151.    Plaintiff could perform the essential functions of her job with or without reasonable accommodations.

152.    Ms. Zavala required the reasonable accommodation of intermittent medical leave.

153.    Defendant made derogatory and discriminatory remarks about Ms. Zavala's disability and/or need for reasonable accommodations.

154.    Defendant penalized Ms. Zavala for taking medical leave, insinuating that her leave would prevent her from being promoted.

155.    Defendant discriminated against Ms. Zavala when it, *inter alia:* issued her a Termination Warning in or around June 2023, failed to promote her in or around June 2023, issued her a negative performance review in or around July 2024, and terminated her in or around December 2024.

156.    The effect of the complained-of practices in the foregoing paragraphs has been to deprive Plaintiff of equal employment opportunities because of her disabilities.

157.    Defendant's above-described conduct was willful, wanton, and/or committed with reckless indifference to Plaintiff's protected rights.

158.    As a direct and proximate cause of Defendant's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, inconvenience, and other non-pecuniary losses; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**SECOND CLAIM FOR RELIEF**
**Disability and/or Perceived Disability Discrimination**
**Colorado Anti-Discrimination Act**
**§ 24-34-401, *et seq.* ("CADA")**

159.    Plaintiff incorporates by reference the above paragraphs as though set forth separately and fully herein.

160.    CADA prohibits employers from discriminatory or unfair employment practices against employees because of the employee's disability.

161.    Plaintiff suffers from PTSD, a condition that substantially limits one or more major life activities.

162.    Plaintiff was qualified for her position and performed her position satisfactorily.

163.    Plaintiff could perform the essential functions of her job with or without reasonable accommodations.

164.    Ms. Zavala required the reasonable accommodation of intermittent medical leave.

165.    Defendant made derogatory and discriminatory remarks about Ms. Zavala's disability and/or need for reasonable accommodations.

166.    Defendant penalized Ms. Zavala for taking medical leave, insinuating that her leave would prevent her from being promoted.

167.    Defendant discriminated against Ms. Zavala when it *inter alia*: issued her a Termination Warning in or around June 2023, failed to promote her in or around June 2023, issued her a negative performance review in or around July 2024, and terminated her in or around December 2024.

168.    The effect of the complained-of practices in the foregoing paragraphs has been to deprive Plaintiff of equal employment opportunities because of her disabilities.

169.    Defendant's above-described conduct was willful, wanton, and/or committed with reckless indifference to Plaintiff's protected rights.

170.    As a direct and proximate cause of Defendant's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, inconvenience, and other non-pecuniary losses; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

### THIRD CLAIM FOR RELIEF
**Retaliation**
**ADA**

171.    Plaintiff incorporates the above paragraphs as though set forth separately and fully herein.

172.    The ADA makes it an unlawful employment practice for an employer to discriminate against any individual because she has opposed unlawful employment practices or otherwise engaged in protected activity.

173.    Ms. Zavala engaged in protected activity when she *inter alia:* requested reasonable accommodations, reported discrimination and/or retaliation in or around December 2022, reported discrimination and/or retaliation in or around August 2024, and reported discrimination and/or retaliation in or around September 2024.

174.    Defendant retaliated against Ms. Zavala when it *inter alia:* issued her a Termination Warning in or around June 2023, failed to promote her in or around June 2023, issued her a negative performance review in or around July 2024, and terminated her in or around December 2024.

175.    These are consequences that would tend to discourage similarly situated employees from engaging in similar protected activity, including reporting discrimination and/or retaliation or requesting reasonable accommodations.

176.    A causal connection exists between Ms. Zavala's protected activities and Defendant's unlawful retaliation.

177.    Defendant engaged in the above-described discriminatory or unfair employment practices with malice or with reckless indifference to Plaintiff's rights.

178.    As a direct and proximate result of Defendant's above-described discriminatory or unfair employment practices, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and Plaintiff is entitled to such general and special damages, economic damages, punitive and/or exemplary damages, and attorneys' fees and costs as permitted by law.

**FOURTH CLAIM FOR RELIEF**
**Retaliation**
**CADA**

179.    Plaintiff incorporates the above paragraphs as though set forth separately and fully herein.

180.    CADA makes it an unlawful employment practice for an employer to discriminate against any individual because she has opposed unlawful employment practices or otherwise engaged in protected activity.

181.    Ms. Zavala engaged in protected activity when she *inter alia:* requested reasonable accommodations, reported discrimination and/or retaliation in or around December 2022, reported

discrimination and/or retaliation in or around August 2024, and reported discrimination and/or retaliation in or around September 2024.

182.    Ms. Zavala further engaged in protected activity under CADA when she reported Mr. Hirsch's and Mr. Hovely's discrimination, including but not limited to, in or around April 2023 and December 2023.

183.    Defendant retaliated against Ms. Zavala when it *inter alia:* issued her a Termination Warning in or around June 2023, failed to promote her in or around June 2023, issued her a negative performance review, and terminated her in or around December 2024.

184.    These are consequences that would tend to discourage similarly situated employees from engaging in similar protected activity, including reporting discrimination and/or retaliation or requesting reasonable accommodations.

185.    A causal connection exists between Ms. Zavala's protected activities and Defendant's unlawful retaliation.

186.    Defendant engaged in the above-described discriminatory or unfair employment practices with malice or with reckless indifference to Plaintiff's rights.

187.    As a direct and proximate result of Defendant's above-described discriminatory or unfair employment practices, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and Plaintiff is entitled to such general and special damages, economic damages, punitive and/or exemplary damages, and attorneys' fees and costs as permitted by law.

## FIFTH CLAIM FOR RELIEF
### Retaliation
### Family and Medical Leave Act
### 29 U.S.C. 2615, *et seq.*

188.     Plaintiff incorporates the above paragraphs as though set forth separately and fully herein.

189.     Ms. Zavala requested intermittent FMLA leave in or around February 2022.

190.     Ms. Zavala used FMLA leave intermittently from February 2022 until March 2024.

191.     Ms. Zavala's FMLA leave from February 2, 2024 until March 1, 2024 was retroactively approved on September 20, 2024.

192.     Defendant retaliated against Ms. Zavala for taking FMLA leave when it *inter alia*: issued her a Termination Warning in or around June 2023, failed to promote her in or around June 2023, issued her a negative performance review, and terminated her in or around December 2024..

193.     Ms. Zavala suffered damages as a result of Defendant's conduct.

194.     As a direct and proximate cause of Defendants' retaliatory conduct, Ms. Zavala suffered damages, including lost wages, emotional pain and suffering, embarrassment, inconvenience, and other non-pecuniary losses; and she is entitled to liquidated damages, economic damages, and attorney's fees and costs as permitted by law.

## SIXTH CLAIM FOR RELIEF
### Discrimination Based on Race
### 42 U.S.C. 1981 ("Section 1981")

195.     Plaintiff incorporates the above paragraphs as though set forth separately and fully herein.

196.    Section 1981 prohibits discrimination in the making and enforcement of contracts and is designed to provide a remedy against discrimination in employment on the basis of race, ancestry, and/or ethnic traits.

197.    Defendant and Ms. Zavala were in a valid employment contract that is subject to Section 1981.

198.    Defendant subjected Ms. Zavala to less favorable terms of employment when it *inter alia*: issued her a Termination Warning in or around June 2023, failed to promote her in or around June 2023, issued her a negative performance review, and terminated her in or around December 2024.

199.    Defendant treated Ms. Zavala less favorably than other employees because of her race/national origin.

200.    Defendant's above-described conduct was willful and wanton, and/or committed with reckless indifference to Ms. Zavala's protected rights.

201.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered loss of income and benefits, emotional pain and suffering, embarrassment, and inconvenience. She is therefore entitled to general and special damages, economic damages, punitive and/or exemplary damages, and reasonable attorneys' fees and costs as permitted by law.

**SEVENTH CLAIM FOR RELIEF**
**Discrimination Based on Gender/Sex**
**Title VII**

202.    Plaintiff incorporates the above paragraphs as though set forth separately and fully herein.

203.    Title VII prohibits employers from discriminatory or unfair employment practices against employees because of the employee's gender/sex.

204.    Discriminatory or unfair employment practices include discharge, demotion, and harassment during the course of employment, or discrimination in compensation, terms, conditions, or privileges of employment.

205.    Defendant subjected Ms. Zavala to less favorable terms of employment when it *inter alia:* issued her a Termination Warning in or around June 2023, failed to promote her in or around June 2023, issued her a negative performance review, and terminated her in or around December 2024.

206.    Ms. Zavala was the only female of color in the supervisor position at the DENTK.

207.    Defendant promoted a less qualified white male over Ms. Zavala.

208.    Defendant failed to apply its disciplinary measures equally between Ms. Zavala and her white male counterparts.

209.    Defendant's above-described conduct was willful and wanton, and/or committed with reckless indifference to Ms. Zavala's protected rights.

210.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered loss of income and benefits, emotional pain and suffering, embarrassment, and inconvenience. She is therefore entitled to general and special damages, economic damages, punitive and/or exemplary damages, and reasonable attorneys' fees and costs as permitted by law.

**EIGTH CLAIM FOR RELIEF**
**Discrimination Based on Gender/Sex/Race & National Origin**
**CADA**

211.    Plaintiff incorporates the above paragraphs as though set forth separately and fully herein.

212.    CADA prohibits employers from discriminatory or unfair employment practices against employees because of the employee's gender/sex, race and national origin.

213.    Discriminatory or unfair employment practices include discharge, demotion, harassment during the course of employment, or discrimination in compensation, terms, conditions, or privileges of employment.

214.    Defendant subjected Ms. Zavala to less favorable terms of employment when it *inter alia:* issued her a Termination Warning in or around June 2023, failed to promote her in or around June 2023, issued her a negative performance review, and terminated her in or around December 2024.

215.    Ms. Zavala was the only female of color in the supervisor position at the DENTK.

216.    Defendant promoted a less qualified white male over Ms. Zavala.

217.    Defendant failed to apply its disciplinary measures equally between Ms. Zavala and her white male counterparts.

218.    Defendant's above-described conduct was willful and wanton, and/or committed with reckless indifference to Ms. Zavala's protected rights.

219.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered loss of income and benefits, emotional pain and suffering, embarrassment, and inconvenience. She is

therefore entitled to general and special damages, economic damages, punitive and/or exemplary damages, and reasonable attorneys' fees and costs as permitted by law.

### NINTH CLAIM FOR RELIEF
**Retaliation**
**Title VII**

220.    Plaintiff incorporates the above paragraphs as though set forth separately and fully herein.

221.    Title VII makes it an unlawful employment practice for an employer to discriminate against any individual because she has opposed unlawful employment practices.

222.    Ms. Zavala engaged in protected activity under Title VII when she reported Mr. Hirsch's and Mr. Hovely's discrimination.

223.    Defendant unlawfully retaliated against Ms. Zavala when it *inter alia*: issued her a Termination Warning in or around June 2023, failed to promote her in or around June 2023, issued her a negative performance review in or around July 2024, and terminated her in or around December 2024.

### PRAYER FOR RELIEF

WHEREFORE, Ms. Zavala respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A.    Economic damages;

B.    Compensatory damages;

C.    Punitive damages as allowed by law;

D.    Liquidated damages as allowed by law;

E.    Attorneys' fees and costs of this action;

F.     Pre-judgment and post-judgment interest at the highest lawful rate; and

G.     Such further relief as the Court deems just and proper.

## **<u>JURY TRIAL DEMAND</u>**

Plaintiff requests a trial by jury on all issues so triable.


Respectfully submitted this 13th day of June, 2025,


          **HKM EMPLOYMENT ATTORNEYS, LLP**

          By: *<u>/s/ Jacqueline Guesno</u>*
          Jacqueline Guesno
          Elizabeth Marasco
          518 17th Street, Suite 1100
          Denver, Colorado 80202
          (720) 439-6701
          jguesno@hkm.com
          emarasco@hkm.com
          *Attorneys for Plaintiff Cristina Zavala*